[Civ. No. 2692. First Appellate District, Division One.—May 23, 1919.]

## GEORGE BAMBRIDGE, Appellant, v. DOUGLAS B. CRANE, etc., Respondent.

[1] ACTION FOR DAMAGES — NEGLIGENT WORDING OF CABLEGRAM — BURDEN OF PROOF.—In an action for damages claimed to have been suffered by the plaintiff from the negligent wording of a cablegram, by reason of which he made certain purchase of copra which he was compelled to sell at a loss, the burden of establishing that the cablegram was so negligently worded as to mislead him is upon the plaintiff.

[2] ID.—INTERPRETATION OF CABLEGRAM.—In arriving at the information sought to be conveyed by a cablegram, the message should be read as a whole and in the light of the relations of the parties and the circumstances surrounding the transaction.

[3] ID.—CASE AT BAR—PROOF OF NEGLIGENCE.—In this action for damages claimed to have been suffered by the plaintiff from the negligent wording of a cablegram sent by defendant, the proof failed to establish negligence on the part of the defendant in the dispatch of the message, but rather showed that the negligence, if any, was upon the part of the plaintiff in construing the message as he did.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

P. A. Bergerot and A. P. Dessouslavy for Appellant.

Goodfellow, Eells, Moore & Orrick for Respondent.

RICHARDS, J.—Plaintiff brought this action against the defendant for the purpose of recovering from him the sum of $1,691.35, the amount of damages claimed to have been suffered by him through the negligence of defendant, consisting in the dispatch of a cablegram to plaintiff by reason of which he made certain purchase of copra for shipment to San Francisco and which he was compelled to sell at a loss.

The court gave judgment in favor of the defendant and the plaintiff appeals.

The essential facts upon which the controversy depends are uncontradicted, and may be stated as follows: The plaintiff is a merchant of Tahiti dealing in copra and other articles, and the defendant is a commission merchant of San Francisco. The business relations of the parties were initiated by a letter from plaintiff to defendant, dated November 18, 1915, in which the defendant was invited to communicate to the plaintiff the terms upon which business could be carried on between them, including the sale on commission by defendant of shipments of copra to be made by plaintiff. This letter was replied to by letter of December 8, 1915, in which the defendant stated the terms and conditions upon which he would engage in the business indicated. In this letter the defendant wrote: "We will by all steamers keep you advised of the current rate for this article [copra]. . . . If you have anything to offer you can send us a wireless by means of the steamer, and we can offer you a price providing you will name a definite quantity with date of shipment." Thereafter several shipments were made and sold and the proceeds duly accounted for, the business being done principally by correspondence. In the course of this correspondence plaintiff requested defend-

ant to keep him informed of the price at which his ship-
ments of copra were disposed of, and also of the market
price at San Francisco of that article.   Thus in one of his
letters plaintiff writes: ''Soon as you will sell the copra
please send me a message via Awanui to Papeete as we have
a receiving wireless station, and to let me know the rate
per pound, as I will always be buying some more to pre-
pare another next shipment. . . . You will not forget to
send me a cable every time that the rate of copra will
change in order for me to buy accordingly.''   In reply to
this letter the defendant wrote: ''Regarding your request
for information, we have to-day sent you the following
cablegram: 'Copra Maitai five half cents Frisco,' and we
trust that same will be entirely intelligible to you.   It
means that we have sold your copra per S. S. 'Maitai' at
5½ cents per pound delivered on wharf San Francisco.
We have taken the matter up of further cables with your
brother, and he is writing you in the premises.   For your
information we would say that we think your request is a
very unusual one and one which will mean a great expense
to you as the price of copra is changing daily.   Rest assured
that we will keep you advised of material changes in the
market.''

On January 14, 1916, plaintiff wrote to defendant as fol-
lows: '' . . . I have received your cable of the 7th inst.
saying that 'Copra Maitai 5½ cents,' for which I thank
you.   You will not forget to send another cable when this
lot will be sold [referring to a shipment of which defend-
ant was then being advised] and to notify me every time
that change of rate will occur.''

On February 2d the defendant, having sold a shipment
of copra by steamship ''Moana'' at the rate of six cents
per pound, wrote plaintiff: ''We have sold same at the
high price of six cents per pound, and on the 31st ult. we
sent you the following cablegram: 'Copra Moana six.' ''

On February 18th the plaintiff wrote to defendant:
'' . . . You will receive by bearer 747 bags (21,566 kg.) of
copra for which I will call your usual attention.   Please
send me a cablegram as usual.   Your wireless message
'Copra Moana six' has not been received. . . . ''

In a letter of March 11th the plaintiff advised defendant
of another shipment of copra, and in that letter said: ''I

am sending to different fruit dealers some alligator pears, and as you will send me a cable for the copra as usual I will instruct my brother to see you for to add on your cable the approximate net proceeds obtained per case of fruit. For example 'pear six' will mean that pears have been sold at about six dollars a case.''

On April 26th defendant wrote plaintiff as follows: " . . . On March 29th we cabled you as follows: 'Pears six copra Republic Moana six one-half' . . . We trust to receive shipment of copra from you by next steamer. This article is quoted to-day in this market at 6½ cents per pound.''

On May 8th the plaintiff wrote to defendant: " . . . I note that you have sold my two shipments of S. S. Re-.public and Moana at 6½ cents per pound, which I consider rather low, as news has arrived here by the same steamer saying that Moana copra has been sold for seven cents. . . . Please at all times inform me of the prospects of copra in order for me to be kept in the track. I do not mean to send me cable often, but from time to time and also write me fully.''

On May 24th defendant wrote plaintiff: " . . . We will follow your instructions as to keeping you advised both by mail and cable of the conditions here. We have to-day sent you the following cablegram: 'Moana seven cents,' from which you will understand that we have sold this cargo at seven cents per pound.''

On June 3d plaintiff wrote defendant: "In order to save cable expense regarding the insurance of copra can you arrange with some insurance house in advance to pay the insurance at the arrival of the copra in San Francisco . . .''

On June 20th the defendant sent the following cablegram to the plaintiff: "Maitai six one half sold yours to arrive six three-quarters.''

On June 3d plaintiff wrote to defendant: " . . . I am shipping you by bearer 1330 small and 147 large bags, representing about 52 tons of copra . . . A. wireless message as usual will be appreciated.''

It is the cablegram of June 20th, reading, "Maitai six one-half sold yours to arrive six three-quarters,'' about which this controversy revolves, the plaintiff contending that he could only understand it to mean that the plain-

tiff had sold defendant's shipment per steamship "Maitai" at six and one-half cents per pound, and that he had sold the next shipment that plaintiff would make (although the defendant had not been advised of any) at six and three-quarters cents per pound, and that, accordingly, after its receipt he purchased for shipment to San Francisco a quantity of copra at prices which would have netted him a profit if sold in San Francisco at six and three-quarters cents per pound, but from which he suffered a loss upon its sale at five and three-quarters cents. On the other hand, the information intended by the defendant to be conveyed to the plaintiff was that the general price for copra arriving at the port of San Francisco on the steamship "Maitai" was six and one-half cents a pound, whereas he had sold the plaintiff's copra shipped on that vessel to arrive at six and three-quarters.

[1] The burden of establishing that this cablegram was so negligently worded as to mislead him was upon the plaintiff; and we are clearly of the opinion that the conclusion of the trial court that he had not sustained this burden is correct. The parties were agreed that the expense of cabling made it advisable, and even necessary when using this means of communication, to be very sparing of words. The practice thus adopted, however, tended, of course, to render such communications ambiguous, which, in turn, necessitated caution in arriving at their meaning. The main argument of the appellant to establish the defendant's negligence in employing the language of the cablegram of June 20th in order to convey to the plaintiff the information that the general price of copra arriving on the "Maitai" was six and one-half cents, and that the plaintiff's lot to arrive thereon had been sold before arrival at six and three-quarters cents, is that in previous cablegrams the name of a vessel followed by a price had been used to convey the information that the plaintiff's shipment by that steamer had been sold for the price named; that, accordingly, he could only understand the first part of the message of June 20th, "Maitai six and one-half cents," to mean that his shipment on that vessel had been sold by defendant for six and one-half cents, and that having thus interpreted the first part of the message he was naturally led to believe that the remaining part, to wit, "sold yours to arrive six and

three-quarters," was that defendant had sold plaintiff's next shipment at six and three-quarters. But it appears to us, considering all the circumstances of the case, that the cablegram was plainly susceptible of the meaning that the defendant intended it to convey and which it very aptly does convey. [2] The message should be read as a whole and in the light of the relations of the parties and the circumstances surrounding the transaction. The plaintiff had requested the defendant to supply him not only with information as to the price at which his particular shipments were sold, but also the market price generally. He had also recently complained to the defendant that a shipment made by him per steamship "Moana" had been sold at six and one-half cents, while the general price of copra by that steamer was seven; a third fact rendering the meaning attributed by the plaintiff to the cablegram extremely improbable was that the defendant had never yet sold for the plaintiff a shipment of copra before he had been advised of its quantity and the vessel by which it was made; and, moreover, the defendant in his first letter to plaintiff at the inception of their business relations had stated: "If you have anything to offer you can send us a wireless by means of the steamer, and we can offer you a price providing you will name a definite quantity with date of shipment." The shipment by steamship "Maitai" was the last one of which defendant had been advised at the time of the dispatch of his cable message. These considerations all tended to negative the meaning attributed by the plaintiff to the message, as do also certain words of the message itself. Thus the words "sold *yours* to arrive" are plainly antithetical to the previous words. If, in fact, the message meant that the plaintiff's copra shipped by the "Maitai" had been sold by the defendant for six cents per pound, and the shipment to be made by the following vessel at six and three-quarters, the words "sold yours" were entirely superfluous, and superfluity was the last thing to be expected in a cablegram of this nature. [3] So far from the defendant being negligent in the dispatch of this message, the negligence, if any, was upon the part of the plaintiff in construing it as he did.

Having thus arrived at the conclusion that the plaintiff's proof failed to establish any negligence on the part of the

defendant, it is unnecessary to consider the further question discussed in the briefs as to the proper calculation of the amount of the damage.

For the reasons given the judgment is affirmed.

Waste, P. J., and Nourse, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 21, 1919.